UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>                    Plaintiff,<br><br>        v.<br><br>RIGOBERTO MAGDALENO,<br><br>                    Defendant. | Case No.  14-cr-00266-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INFORMATION**<br><br>[Re:  ECF 23] |

Defendant Rigoberto Magdaleno is charged with violating 8 USC § 1326, Illegal Reentry After Deportation. He asks this court to dismiss the information on the basis that his deportation proceedings were constitutionally invalid and therefore the deportation order resulting therefrom cannot serve as a predicate deportation for the required element of the offense. For the reasons below, the motion is **GRANTED**.

**I.    BACKGROUND**

Defendant Magdaleno entered this country in 1985 with his family. Defendant's Opening Brief, ECF 23 at 2. On November 29, 1988, he applied for legal residence as a special agriculture worker under § 210 of the Immigration Reform and Control Act of 1986 (IRCA), 8 USC § 1160. Norris Decl., ECF 27-1. He was approved for temporary resident status on October 27, 1990, and approved for permanent resident status on December 1, 1990. Norris Decl., ECF 27-1.

On March 10, 1995, Magdaleno pleaded guilty to two independent felonies and was sentenced to 360 days in county jail. Arraignment and Sentence Orders, ECF 23-2, -3. One consequence of these pleas was that Magdaleno became deportable under 8 USC § 1251(a)(2)(A)(ii) (1995). The government instituted removal proceedings against Magdaleno in December, 1998. Notice to Appear, ECF 23-1. On January 12, 1999, Magdaleno had a removal hearing before an immigration judge and was ordered removed from the country. Summary of Proceedings, Warrant, and Removal Order, ECF 23-4, -5, -6. At the hearing, he was not informed that he might be eligible to

1  apply for discretionary relief from the removal order. Removal Hearing Transcript, ECF 28.
2  Without proper advisement of his rights, he waived his right to appeal the order. *Id.* at 5.
3      He subsequently reentered the country, prompting the reinstatement of the initial removal
4  order on November 30, 2000. He returned again and this time was charged with Eluding
5  Examination and Inspection by Immigration Officers of the United States and with Illegal Reentry
6  After Deportation. Plea Agreement, ECF 27-6. On April 1, 2010, he agreed to plead guilty to the
7  first charge and the prosecution agreed to drop the second charge. *Id.* As part of the plea
8  agreement, Magdaleno also stipulated to the reinstatement of the initial removal order and was
9  removed thereunder.
10      Undeterred, he once again reentered the country, which led to the current charges being
11  brought against him.

## II. LEGAL STANDARD

    In a prosecution for Illegal Reentry under 8 USC § 1326(a), the government must prove, *inter alia*, that the defendant was previously "denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal [was] outstanding." 8 USC § 1326(a)(1); *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013). The defendant accordingly has a due process right to collaterally attack the underlying deportation order, because it serves as a predicate element of the crime for which he is charged. 724 F.3d at 1129; *United States v. Mendoza–Lopez*, 481 US 828, 837–38 (1987) ( "Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding.").

Section 1326(d) expressly provides for such collateral attacks on an underlying deportation order, but establishes limits on them. To succeed in a collateral attack to an underlying removal order, a defendant must demonstrate that:

1) he exhausted all administrative remedies available to appeal his prior removal order;
2) the prior removal proceedings "improperly deprived [him] of the opportunity for judicial review;" and
3) the entry of the prior removal order was "fundamentally unfair."

> *United States v. Aguilera-Rios*, 12-50597, 2014 WL 4800292 (9th Cir. Sept. 29, 2014); 8 USC § 1326(d).

With respect to § 1326(d)(3), the underlying removal order is "fundamentally unfair" if:

a. [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and
b. he suffered prejudice as a result of the defects.

> *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

Although § 1326(d)(1)-(3) are independent requirements, a defendant may point to the same ground to satisfy multiple requirements. *See, e.g.*, *Gonzalez-Villalobos*, 724 F.3d at 1130 ("Although 8 USC § 1326(d)(1) and (d)(2) are separate requirements, we have generally held that where an alien is deprived of his right to appeal to the BIA, he satisfies both (d)(1) and (d)(2)."). Most relevant here, the Ninth Circuit has held that when an immigration judge fails to inform a potential deportee of his apparent eligibility for discretionary relief, requirements (1), (2), and (3)(a) above are satisfied:

> In sum, the IJ's duty ... to "inform the alien of his or her apparent eligibility" to apply for certain discretionary relief may be the centerpiece of a collateral challenge under § 1326(d). A violation of this duty (1) excuses the alien from § 1326(d)(1)'s exhaustion requirement; (2) satisfies § 1326(d)(2)'s deprivation of judicial review requirement; and also (3) serves as a due process violation that goes halfway to demonstrating that the removal proceeding was "fundamentally unfair," as demanded by § 1326(d)(3).

> *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1016 (9th Cir. 2013).

The second requirement of § 1326(d)(3), that the defendant suffered prejudice as a result of the IJ's failure to inform him of his apparent eligibility for discretionary relief, can be met by showing "that he had a 'plausible' ground for relief from deportation." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).

Thus, if Defendant can show that he was eligible for discretionary relief, that the IJ failed to inform him of his apparent eligibility, and that he had a plausible ground for such relief, then his collateral attack succeeds and the motion must be granted. Defendant contends that he was eligible for discretionary relief under 8 USC § 1229c(a), a statutory provision that permits an alien—at the discretion of the Attorney General—to choose voluntary departure from the United States at his own expense in lieu of removal proceedings. Defendant further argues that he had plausible grounds to seek voluntary departure and was thus prejudiced by the IJ's failure to inform him of his apparently eligibility for such relief.

Defendant argues in the alternative that the IJ's failure to advise him of the possibility of seeking a waiver of deportation provides an independent basis for his collateral attack on the 1999 removal order. *See* INA § 212(c), codified at 8 USC § 1182(c) (1995). Upon inquiry by the court at the hearing, Defendant acknowledged that the § 1229(c) and the § 212(c) arguments are separate and independent grounds for granting the motion. The court further notes, as the parties conceded at the hearing, that the facts presented here have not been addressed by the Ninth Circuit and there is thus no clear precedent to guide this court in determining whether Defendant was entitled to advisement of apparent eligibility under § 212(c) at the time of his deportation proceeding. Because Defendant's argument under § 1229c(a) is sufficient to dispose of the current motion, the court has no cause to address Defendant's § 212(c) argument.

### III.  DISCUSSION

The government does not contest Magdaleno's eligibility to seek relief under 8 USC § 1229c(a), nor does it contest the IJ's failure to advise Magdaleno of his apparent eligibility to seek such relief. The government opposes Defendant's motion on two grounds:

First, the government argues that Defendant has not been deprived of the opportunity for judicial review. If the government is correct, Defendant's collateral attack fails the requirement of 8 USC § 1326(d)(2). As explained above, the failure of an IJ to inform a defendant of his apparent eligibility for discretionary relief is normally sufficient to satisfy § 1326(d)(2). However, the government urges the court to find an exception here because of Defendant's 2010 plea bargain.

Second, the government argues that Defendant had no plausible ground for voluntary departure and therefore would not have been granted discretionary relief even if he had been apprised of his eligibility. This would mean that any failure on the part of the IJ to advise Defendant of his eligibility was non-prejudicial, preventing Defendant from showing that entry of the initial removal order was "fundamentally unfair" as required by 8 USC § 1326(d)(3).

### A.   Denial of the Opportunity for Judicial Review

The government argues that, even though the IJ's failure to inform Magdaleno of his eligibility to seek voluntary departure may have denied him the opportunity for judicial review in 1999, the requirement of § 1326(d)(2) is still not met because Magdaleno was later afforded the opportunity for judicial review. The "opportunity" referred to by the government is the charge of Illegal Reentry After Deportation brought against Magdaleno in 2010. According to the government, the 2010 prosecution for Illegal Reentry "gave him an opportunity to raise the same arguments he is presenting to this court now." Government's Opposition Brief, ECF 32 at 9. This is a somewhat extraordinary contention, given that the charge was dismissed by the government, thus rendering the legality of the 1999 deportation order moot.

To its credit, the government does not appear to be arguing that, had it simply dismissed all charges against Magdaleno in 2010, the charge's transient existence would still have constituted opportunity for judicial review. Rather, the government attempts to tie its argument to the fact that the government's dismissal of the Illegal Reentry charge was done pursuant to a plea agreement in which Magdaleno agreed to plead guilty to a different charge. In 2010, Magdaleno was charged with (1) Eluding Examination and Inspection by Immigration Officers of the United States (a misdemeanor) and (2) Illegal Reentry After Deportation (a felony). The government offered to dismiss the Illegal Reentry charge against Magdaleno in exchange for a guilty plea to the Eluding Examination charge; Magdaleno accepted. Notably, Eluding Examination, the charge to which Magdaleno pleaded guilty, does not require a prior legal removal as one of its elements, *see* 8 USC § 1325, while the charge dismissed by the government does, *see* 8 USC § 1326.

The government urges that Magdaleno could have rejected the government's offer to dismiss the charge of Illegal Reentry and contested it instead. If he had done so, assuming the government

chose not to dismiss the charge anyway, Magdaleno could then have raised a challenge to the initial removal order and received judicial review at that point. The government thus contends that Magdaleno's decision to plead guilty to Eluding Examination represented a voluntary waiver of his right to seek judicial review of the removal order—an element of the Illegal Reentry charge.

Even in 2010, Magdaleno was not aware of any grounds for challenging his 1999 removal, Defendant's Decl., ECF 35, so the decision not to do so cannot be considered a knowing and voluntary waiver of judicial review. This is further buttressed by the fact that he was explicitly advised by counsel that his pleading guilty would not prejudice his future ability to contest the validity of his 1999 removal order. Castillo-Reina Decl., ECF 34.

Furthermore, even if Magdaleno had known in 2010 that he had grounds to collaterally attack his 1999 removal, the decision not to do so cannot be considered voluntary in any meaningful sense. In 2010, Magdaleno found himself faced with two choices:

1. He could face a felony charge, challenge it, and receive judicial review of the legality of his 1999 removal order.
2. He could accept the government's offer to dismiss the felony charge (pleading guilty to a misdemeanor in return).

Where an individual has a choice between facing a felony charge and not facing a felony charge, and judicial review attends only the former option, the choice cannot be deemed an "opportunity" for judicial review in any meaningful sense. Put differently, when an opportunity for judicial review is inextricably attached to a felony criminal charge, declining to face that charge cannot reasonably be construed as a waiver of the opportunity for judicial review. Certainly, Magdaleno "could have" received judicial review of his 1999 removal order by rejecting the plea bargain or by accepting the plea bargain on the condition that the government not dismiss the Illegal Reentry charge against him. But it is difficult to imagine any reasonable criminal defendant making such a decision, and the court is accordingly disinclined to construe § 1326(d)(2) as imposing a duty to do so.

Finally, the government argues that policy considerations favor treating the 2010 charge of Illegal Reentry as foreclosing Magdaleno's present collateral challenge, because "[r]epeated opportunities for judicial review would encourage abuse." Gov.'s Opp. Brief, ECF 32 at 11. But this

is not a situation where Defendant formerly mounted a challenge and lost, or was presented with a ripe opportunity to mount a challenge and neglected to pursue it. This is a situation where any potential challenge in 2010 was mooted by the government's dismissal of the Illegal Reentry charge. The court is hard-pressed to identify any real potential for abuse under such circumstances. Indeed, a greater potential for abuse attends the position urged by the government. The government's 2010 offer to dismiss the Illegal Reentry charge may well have been animated by its own doubts as to the validity of the 1999 removal order and its desire to avoid any challenge being mounted against it. The government's decision in 2010 not to place the original removal order in question should not relieve the government of defending its validity now. It would be an odd result indeed if the ultimate effect of the government's dismissal of a criminal charge were to conclusively establish one of the elements of the charge for future prosecutions.

Accordingly, the court concludes that Magdaleno was improperly denied the opportunity for judicial review, in satisfaction of § 1326(d)(2).

### B. Plausible Grounds for Relief

Magdaleno is only entitled to dismissal if he was prejudiced by the IJ's failure to inform him of his apparent eligibility to seek voluntary removal in lieu of deportation proceedings. While Magdaleno need not establish that he *would* have been granted relief had he sought it, the mere possibility that he would have been granted relief is unsufficient. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). He must establish that he had "plausible ground for relief." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004).[1] Magdaleno has more than met this burden. Given the state of the record in 1999, it is quite plausible that Magdaleno would have been granted relief in the form of voluntary departure. Given the numerous factors weighing in Magdaleno's favor, the court need not consider the statistics presented in Defendant's brief

---

[1] As the government acknowledges in its opposition brief, ECF 32 at 11, the requirement that an individual "who has a serious criminal history must demonstrate unusual or outstanding equities in order to receive relief," *United States v. Gonzalez-Valerio*, 342 F3d 1051, 1056-57 (9th Cir. 2003), is specific to relief under INA § 212(c), which allows the individual to remain in the country. Because the court does not reach the plausibility of Magdaleno's grounds for relief under § 212(c), the court need not determine this requirement's application to the present case.

7

1  regarding how frequently such relief was granted, *see, e.g.*, Defendant's Opening Brief, ECF 23 at
2  13, rendering the government's objection to these statistics moot.
3      As an initial matter, Magdaleno had extensive multi-generational family ties to the United
4  States and almost no family ties to Mexico. Maria de Jesus Magaña Decl., ECF 23-10 ¶ 6. At the
5  time of his deportation hearing, he was living with his family (legal residents that planned to
6  remain in the United States on the path to naturalization), was gainfully employed, and was
7  contributing to the family's finances. *Id.* at ¶ 5, Gustavo Magdaleno Decl., 23-9 ¶ 5. He was also in
8  a relationship, the happily expectant father of a child that would be an American citizen at birth.
9  Maria de Jesus Magaña Decl., ECF 23-10 ¶ 5. Magdaleno's deportation ended the relationship. *Id.*
10  at ¶ 7. All of these factors weigh heavily in favor of discretionary relief from deportation.
11      The government points to Magdaleno's criminal history in order to cast doubt on the
12  plausibility of Magdaleno's grounds for relief. It is true that, as of Magdaleno's 1999 hearing, he
13  had four convictions on his record. However, the leniency of the sentence for each of his four
14  convictions is notable; indeed, he did not serve a prison term for any of them, the harshest of his
15  sentences being 240 days in county jail, plus probation. While the transcripts from his sentencing
16  hearings are not in the record before the court, the leniency of his sentences suggests that the
17  sentencing judge found Magdaleno less culpable than others convicted of the same crimes. It
18  stands to reason that the factors leading to his light sentences would also have weighed in favor of
19  relief from deportation.
20      The court concludes that despite Magdaleno's criminal history, he could have mounted a
21  plausible case for relief from deportation under 8 USC § 1229c(a) and was therefore prejudiced by
22  the IJ's failure to inform him of his apparent eligibility to seek such relief.

### IV.   CONCLUSION

    At Magdaleno's removal hearing in 1999, the IJ failed to inform Magdaleno of his eligibility to seek relief in the form of voluntary departure under 8 USC § 1229c(a), this failure improperly denying him the opportunity for judicial review and relieving him of the requirement of exhausting his administrative remedies. Because he was prejudiced by this due process violation, the entry of the 1999 removal order was fundamentally unfair. Accordingly, the requirements of § 1326(d) are

1 met and Defendant Magdaleno has mounted a successful collateral attack on his initial removal
2 order.
3   For the foregoing reasons, **IT IS HEREBY ORDERED** that:
4     Defendant's Motion to Dismiss the Information is **GRANTED**. The Information is
5     **DISMISSED**.
6 Dated: November 5, 2014

            */s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge